UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-21115-CIV-COHN/SELTZER

REYNA GUERRERO, individually
and on behalf of others similarly situated

       Plaintiff,

vs.

TARGET CORPORATION,

       Defendant.

_____/

## ORDER GRANTING TARGET CORPORATION'S MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant Target Corporation's Motion to

Dismiss Complaint [DE 26] ("Motion").  The Court has carefully considered the Motion,

Plaintiff's Response [DE 37] ("Response"), Defendant's Reply [DE 41] ("Reply")[1], the

argument of counsel at the August 31, 2012 hearing, and is otherwise fully advised in

the premises.

I. BACKGROUND

Plaintiff Reyna Guerrero ("Plaintiff") filed a purported class action complaint

against Defendant Target Corporation ("Defendant") on March 20, 2012.  Complaint

[DE 1].  The Complaint alleges that Defendant's sale of honey through its "Market

---

[1]     Plaintiff filed a Motion for Leave to File Surreply in Opposition to
Defendants' [sic] Motion to Dismiss.  See DE 43.  Defendant opposes this motion on
the grounds that its reply did not raise any new arguments which merit a surreply.  See
DE 44.  The Court agrees with Defendant that Plaintiff is not entitled to a surreply.
Local Rule 7.1(c) specifically allows movants to serve reply memoranda "limited to
rebuttal of matters raised in the memorandum in opposition without reargument of
matters covered in the movant's initial memorandum of law."  L.R. 7.1(c).  Plaintiff is not
entitled to a surreply because Defendant has complied with the Local Rules.

Pantry" and "Archer Farms" brands is misleading and deceptive to consumers because these products, which have had all traces of naturally occurring pollen removed, do not conform to Florida's "honey standard," as codified at Florida Administrative Code section 5K-4.027 ("Florida Honey Standard").  Compl. ¶¶ 1, 11.  Specifically, Plaintiff contends that "Target's labeling claims with respect to these products being 'honey,' without qualification, or having a specific plant origin. . . are false and misleading."  Id. ¶ 1.  Plaintiff further alleges that "[t]he presence of pollen in honey also allows for identification of the geographical origin of that particular honey," thus allowing consumers to ensure that the honey they have purchased is not from undesirable locations such as China.  Id. ¶ 2.  Plaintiff asserts that Defendant's pollen-less honey does not "provide any of the cholesterol lowering and other health benefits which consumers believe may be derived from the consumption of pollen in honey."  Id. ¶ 37.  Plaintiff also states that when she purchased Defendant's honey, "she reasonably believed that those bottles contained 'honey' as defined by Florida law."  Id. ¶ 42.

Plaintiff, on behalf of herself and all similarly situated Florida consumers, brings claims against Defendant for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213 ("FDUTPA") (Count I) and unjust enrichment (Count II).  Defendant has now moved to dismiss, arguing that the Complaint should be dismissed because (1) it fails to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard; (2) Plaintiff lacks standing to bring these claims; (3) FDUPTA's safe harbor provision precludes Plaintiff's claims; and (4) Plaintiff's claims are preempted by federal law.  See generally Motion.  Plaintiff opposes the Motion.

2

## II. DISCUSSION

### A. Legal Standard.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) encompasses both challenges based on the court's lack of federal subject matter jurisdiction and challenges based on lack of standing.  Stalley v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).") (internal quotations omitted)); see also Holy Cross Hosp., Inc. v. Baskot, No. 10–62133–CIV, 2010 WL 5418999, at *2 (S.D. Fla. Dec. 23, 2010) ("Standing is jurisdictional in nature; therefore, Defendants proceeded under Rule 12(b)(1) to dismiss Count I for lack of standing.").  A claim cannot proceed in federal court if the plaintiff does not have standing. Valley Forge Christian Coll. v. Am. United for Separation of Church & State, 454 U.S. 464, 471 (1982).

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action.  Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged

3

therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  Twombly, 550 U.S. at 555.  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Id.  Accordingly, a well pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'"  Id. at 556.

## B. Standing.[2]

Defendant argues that Plaintiff's claims fail because she lacks standing to assert them.  Motion at 8.  Specifically, Defendant asserts that Plaintiff cannot allege an injury in fact "merely by claiming that the honey she purchased was composed of something different from what she expected."  Id. at 9.  In response, Plaintiff argues that Defendant has conflated the test for standing with the test for proving actual damages under FDUTPA.  Response at 6.  Plaintiff contends that, at this stage of the proceedings, she need only "generally allege[] that she has been injured and suffered damages."  Id.  Plaintiff argues that she has met this burden because the Complaint alleges that she did not receive the product she thought she had purchased and that she would not have purchased the product if she knew that it did not contain pollen.  Id. at 6-7.

The constitutional standing analysis requires a plaintiff to demonstrate that: (1) the plaintiff suffered an injury in fact; (2) the injury was causally connected to the defendant's action; and (3) the injury will be redressed by a judgment in the plaintiff's

_____

[2]       Although standing is not addressed first in Defendant's Motion, the Court has addressed it first because if Plaintiff lacks standing, the Court need not consider the rest of the Motion.  See Valley Forge Christian Coll., 454 U.S. at 471.

favor.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Here, Plaintiff has

alleged (1) that she purchased a product labeled "honey;" (2) the product that she

purchased was not honey under Florida law; (3) and that she suffered damages as a

result of this misrepresentation.  Compl. ¶¶ 42-44.  Specifically, Plaintiff contends that

she did not receive the health benefits of pollen or "the organoleptic, physiochemical or

microscopic properties of the floral or plant source contained on the label."  Id. ¶ 43.  At

this stage of the proceedings, the Court agrees with Plaintiff that she has sufficiently

alleged an injury in fact.  See Cardenas v. NBTY, Inc., – F. Supp. 2d –, No. CIV.

S–11–1615 LKK/CKD, 2012 WL 1593196, at *5 (E.D. Cal. May 4, 2012) (finding that

allegations that plaintiff had injury in fact sufficient to establish Article III standing where

plaintiff alleged that she relied on representations on packaging of product and that she

lost money on the ineffective product).[3]

        The Court is unpersuaded by Defendant's reliance upon Medley v. Johnson &

Johnson Consumer Cos., No. 10-cv-02291, 2011 WL 159674 (D.N.J. Jan. 18, 2011).

In Medley, the court found that the plaintiff had failed to allege an economic injury

sufficient to confer standing where the plaintiff purchased shampoo that allegedly

contained a toxic chemical.  2011 WL 15974, at *2.  The court held that where "there

were no adverse health consequences, and the product worked as intended," plaintiff

had failed to demonstrate an injury in fact.  In the present case, the issue is not whether

---

        [3]        In its Reply, Defendant argues that Plaintiff's allegations that she did not
receive the health benefits of honey fail to establish standing because they are based
on her "subjective belief" that honey confers health benefits.  Reply at 8.  At this stage
in the proceedings, Plaintiff has adequately alleged that the pollen confers health
benefits.  Whether pollen actually does so is more properly the subject of expert
testimony.

the honey Plaintiff purchased contained an unsafe substance, but rather that the honey lacked an ingredient, pollen, that Plaintiff contends is an essential element of honey under Florida law.  See Compl. ¶ 43.  Additionally, Plaintiff argues that the honey she purchased did not confer the health benefits that she expected, id., the pollen-less honey was less valuable than honey with pollen, id. ¶ 40, and that she would not have purchased the honey if she knew it did not contain pollen.  Id. ¶ 67.  Thus, unlike the plaintiff in Medley, Plaintiff contends that the product she purchased was not what she expected.[4]  Plaintiff has adequately plead an injury in fact.

---

[4]      Similarly, Koronthaly v. Loreal USA, Inc., 374 Fed App'x 257, 259 (3d Cir. 2010), also cited by Defendant, involved a plaintiff who complained about lead in lipstick she purchased.  In that case, the court found that the plaintiff had failed to allege an injury in fact because the Food & Drug Administration ("FDA") had concluded that the amount of lead in the lipstick was safe and did not require warnings and the plaintiff conceded that she had not suffered any adverse health effects.  Koronthaly, 374 Fed App'x at 259.  Indeed, the court noted that: "[a]bsent any allegation that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect, Koronthaly has not demonstrated a concrete injury-in-fact."  Id.  By contrast, here, the Plaintiff has alleged that the honey she purchased did not contain the health benefits of pollen that she expected, was less valuable than honey that contained pollen and that she would not have purchased the honey if she knew it did not contain pollen.  See Compl. ¶¶ 40, 43, 67.

Similarly, in Boysen v. Walgreen Co., No. C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012), the court found that a plaintiff who alleged that the defendant failed to disclose arsenic and lead levels in fruit juices had failed to demonstrate an injury in fact because he paid for and consumed the fruit juices without suffering any harm.  Boysen, 2012 WL 2953069, at *4.  Notably, the court observed that the fruit juices "do not fail to comply with any federal standards" and did not have a "diminished value" due to the presence of the lead.  Id.  The Court finds that Plaintiff's injury in fact allegations, which specifically contend that the Defendant's honey fails to comply with Florida regulations and was less valuable than honey with pollen, are sufficient to state an injury in fact.  See Compl. ¶¶ 43, 67.

## C. Sufficiency of the Pleading.

Defendant also contends that the Complaint should be dismissed because Plaintiff "does not adequately plead that the honey she alleges she purchased from Target was not 'honey' under any standard" and the allegations are conclusory.  Motion at 6.  Additionally, Defendant argues that Plaintiff's FDUTPA claim fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).  Id. at 7.  Finally, Defendant argues that because Plaintiff's FDUTPA claim fails to state a claim, her unjust enrichment claim also fails.  Plaintiff disagrees that she is required to plead her FDUTPA claim with particularity under Rule 9(b).  Response at 3.  Plaintiff also contends that her FDUTPA claim meets the standard of Rule 8 and that she is entitled to plead an unjust enrichment claim in the alternative.  Id. at 5.  The Court will address each of these arguments below.

### 1. Plaintiff is Not Required to Plead Her FDUTPA Claim With Particularity.

Generally "[t]he requirements of Rule 9(b) do not apply to claims under the FDUTPA."  Galstaldi v. Sunvest Comtys. USA, LLC, 637 F. Supp. 2d 1045, 1056 (S.D. Fla. 2009).  Because FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts like fraud, "the plaintiff need not prove the elements of fraud to sustain an action under the statute."  Id. (quotations omitted). Accordingly, the heightened pleading requirements of Rule 9(b) cannot serve as a basis to dismiss FDUTPA claims.  Id.; see also State, Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc., 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party

7

asserting a deceptive trade practice claim need not show actual reliance on the

representation or omission at issue."). Accordingly, the Court finds that Rule(9) is

inapplicable to Plaintiff's FDUTPA claims.[5]

<u>2. As Currently Plead, Plaintiff Fails to State a FDUTPA Claim.</u>

Defendant contends that the Complaint should be dismissed because Plaintiff

does not offer any factual support for her allegation that the honey purchased from

Target does not contain pollen.  Motion at 6.  Additionally, Defendant argues that the

Complaint fails to plead that the honey the Plaintiff purchased "was not 'honey' under

any standard."  <u>Id.</u>  In opposition, Plaintiff contends that under <u>Iqbal</u>, the Court "may

and 'should assume [the] veracity," of Plaintiff's allegation that the honey she

purchased did not contain pollen.  Response at 5 (quoting <u>Iqbal</u>, 556 U.S. at 679).

To state a claim under FDUTPA, a party must allege (1) a deceptive act or unfair

practice; (2) causation; and (3) actual damages.  <u>Galstaldi</u>, 637 F. Supp. 2d at 1056.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions."  <u>Mills v. Foremost Ins.</u>

<u>Co.</u>, 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 555). Rather,

a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable

---

[5]        The Court acknowledges that other courts within this district have reached
the opposite result.  <u>See, e.g.</u>, <u>Llado-Carreno v. Guidant Corp.</u>, No. 09–20971, 2011
WL 705403, at *5 (S.D. Fla. Feb.22, 2011) (finding Rule 9(b) does apply). However, this
Court has previously held that Rule 9(b) does not apply to FDUTPA claims and the
Court is not persuaded that it should reconsider this position.  <u>See Costa v. Kerzner</u>
<u>Int'l. Resorts, Inc.</u>, No. 11–60663, 2011 WL 2519244, at *2 (S.D. Fla. June 23, 2011).

inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at

678.  Here, Plaintiff's FDUTPA claim is premised on the fact that the honey sold by

Defendant did not contain pollen as required by Florida's Honey Standard.  See Compl.

¶¶ 37, 43, 62.  The Complaint fails to provide any more specific details regarding how

Plaintiff knows that Defendant's honey did not contain pollen.  Thus, the Court agrees

with Defendant's argument that Plaintiff's Complaint, as currently plead, fails to state a

claim because it does not provide fair notice to Defendant regarding the factual basis

for Plaintiff's claim.[6]  Accordingly, the Court will grant Defendant's Motion and dismiss

Plaintiff's Complaint, but afford Plaintiff leave to amend.

### 3. Whether Plaintiff States an Unjust Enrichment Claim.

Defendant also argues that Plaintiff's unjust enrichment claim fails because it is

---

[6]     The Court disagrees with Plaintiff's contention that the Court must accept
Plaintiff's allegation that Defendant's honey did not contain pollen as true.  See
Response at 9.  Iqbal provides only that the court should assume the veracity of  "well-
pleaded allegations."  556 U.S. at 679.  Although Plaintiff asserts in her response that
"Plaintiff's honey was tested by an appropriate expert prior to the complaint's filing,"
Response at 5, as pointed out by Defendant in its Reply, a Plaintiff may not amend a
complaint via a response to a motion to dismiss.  See Reply at 9 n.6 (citing Long v.
Satz, 181 F.3d 1275, 1278-79 (11th Cir. 1999)); see also Bruhl v.
PriceWaterhouseCoopers Int'l, No. 03–23044, 2007 WL 997362, at *4 (S.D. Fla. Mar.
27, 2007) (noting that a plaintiff may not supplant allegations made in their complaint
with new allegations raised in a response to a motion to dismiss); accord Walker v. City
of Orlando, No. 07–651, 2007 WL 1839431, at *5 (M.D. Fla. Jun. 26, 2007) (limiting
consideration to the allegations contained in the complaint, even when new allegations
were raised in response to a Motion to Dismiss).

However, the Court declines to find, as argued by Defendant, that the Complaint
fails to state a claim because it fails to plead that the honey Plaintiff purchased was not
"honey" under any standard.  See Motion at 6.  Plaintiff has alleged that Defendant's
honey violates the Florida Honey Standard.  Whether that honey satisfies some other
standard is not one of the elements of a FDUTPA claim and is more appropriately
addressed by the Court when analyzing Defendant's preemption and FDUTPA safe
harbor arguments.

based on the same conduct as her FDUTPA claim.  Response at 8.  In opposition,

Plaintiff contends that she is permitted to allege an unjust enrichment claim in the

alternative to her FDUTPA claim.  Response at 5.  The Court disagrees and will dismiss

the unjust enrichment claim with prejudice.

        Unjust enrichment is an equitable doctrine.  "Liability in unjust enrichment has in

principle nothing to do with fault.  It has to do with wealth being in one person's hands

when it should be in another person's."  Guyana Tel. & Tel. Co. v. Melbourne Int'l

Comms., Ltd., 329 F.3d 1241, 1245 n.3 (11th Cir. 2003).  The doctrine applies only

where (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the

benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under

the circumstances, it would be inequitable for the defendant to retain the benefit without

paying for it.  See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 899 So.

2d 1222, 1227 (Fla. Dist. Ct. App. 2005).

        The Court must dismiss Plaintiff's claim for unjust enrichment because she does

not lack an adequate legal remedy.  See Prohias v. Pfizer, Inc., 490 F. Supp. 2d 1228,

1236 (S.D. Fla. 2007) (dismissing unjust enrichment claim premised upon

misrepresentations about a product's qualities) (citing Am. Honda Motor Co. v.

Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("It is well

settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not

available where there is an adequate legal remedy.")).  Despite Plaintiff's contention

that her unjust enrichment claim is an alternative to her FDUTPA claim, Plaintiff seeks

recovery for the exact same wrongful conduct as in her FDUTPA claim.  Compl. ¶¶ 70-

76.  Thus, if Defendant's sale of honey was deceptive, misleading or unlawful, causing

10

damage to Plaintiff, she has an adequate remedy under Florida law.  See Prohias, 490

F. Supp. 2d at 1236 (citing Am. Honda Motor Co., 390 F. Supp. 2d at 1178 ("The

[d]efendants' quasi contract claim is predicated on the same set of allegations

supporting their claims under FUTSA and FDUTPA.  Accordingly, because an adequate

remedy exists at law, the Defendants have not stated a claim upon which relief may be

granted for . . . unjust enrichment.")).  Although a plaintiff ordinarily may plead in the

alternative, here, if Plaintiff cannot prevail on her FDUTPA claim, she cannot prevail on

her unjust enrichment claim.  See Weaver v. Mateer & Harbert, P.A., No.

5:09–cv–514–Oc–34TBS, 2012 WL 3065362, at *11 (M.D. Fla. July 27, 2012)

("However, although Plaintiff may be entitled to plead in the alternative, that is not what

Plaintiff has done in this case.  Plaintiff's unjust enrichment claim relies on the factual

predicate common to all its claims.").  Thus, Plaintiff's claim for unjust enrichment must

be dismissed.[7]

### D. Plaintiff's Claims Do Not Fall Within FDUTPA's Safe Harbor Provision.

Defendant also argues that Plaintiff's claims fail because the honey Defendant

---

[7]     The Court is not persuaded by Plaintiff's reliance upon James D. Hinson
Electrical Contracting Co. v. Bellsouth Telecommunications, Inc., No.
3:07-cv-598-J-32MCR, 2008 WL 360803, at *4 (M.D. Fla. Feb. 8, 2008).  See
Response at 5.  This unpublished decision from the Middle District of Florida contains
minimal analysis of why the court permitted the plaintiff to state a claim for unjust
enrichment as an alternative to its FDUTPA claim.  Bellsouth Telecomm., Inc., 2008 WL
360803, at *4.  Indeed, Garcia v. Swire Pacific Holdings, Inc., No. 09–23839, 2010 WL
1524230 (S.D. Fla. Apr. 14, 2010), a case cited by Plaintiff for the proposition that
alternative pleading is permissible states that "[r]ules 8 and 11 only permit the pleading
of alternative factual theories if counsel (or an individual, if proceeding pro se), after
conducting an adequate investigation, is unable to determine the true facts." 2010 WL
1524230, at *5.  Here, however, the factual allegations underlying the FDUTPA and the
unjust enrichment claims are exactly the same so Plaintiff should not be permitted to
plead an unjust enrichment claim in the alternative.

sold was labeled in accordance with both federal and state law and, thus, falls within FDUTPA's safe harbor provision.  Motion at 11.  Plaintiff disagrees arguing that (1) Defendant's safe harbor argument reaches outside the four corners of the complaint; (2) federal law does not provide a safe harbor; and (3) state law does not provide a safe harbor.  Response at 8-12.

FDUTPA provides that it does not apply to "[a]n act or practice required or specifically permitted by federal or state law."  Fla. Stat. §501.212(1).  In <u>Prohias v. Astrazeneca Pharmaceuticals, L.P.</u>, 958 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2007), the Third District Court of Appeal affirmed the dismissal of a complaint after holding that certain promotional and advertising activities fell within FDUPTA's safe harbor provision because the specific act or practice complained of was "specifically permitted" by federal law.  958 So. 2d at 1056.  For the reasons discussed below, the Court is unconvinced that Defendant's sale of honey falls within FDUTPA's safe harbor.

<u>1. Whether Defendant's Honey Falls Within the FDUTPA Safe Harbor Under Federal Law.</u>

Defendant argues that federal law permits honey to be labeled and sold as honey with or without pollen.  Motion at 12.  Because federal law "permits" honey that does not contain pollen to be labeled as USDA Grade A honey, Defendant contends that its honey falls within FDUTPA's safe harbor provision.  <u>Id.</u> (citing 50 Fed. Reg. 15861).  Plaintiff disputes this, arguing that while the Court may take judicial notice of other standards and regulations, it cannot, at the motion to dismiss stage, assume that Defendant's honey meets those standards.  Response at 8.  Moreover, Plaintiff contends that this voluntary standard was repealed in 1995 and thus cannot be "an act

or practice required or permitted by federal" law.  Id. at 8-9.

First, the Court disagrees with Plaintiff's argument that it is inappropriate for the Court to determine whether Defendant's honey falls within the FDUTPA safe harbor on a motion to dismiss.  As Judge Jordan noted:

> It is well-established that FDUTPA does not apply to any acts or practices that are "required or specifically permitted by federal or state law." 3B TV. Inc. v. State, 794 So.2d 744, 747 (Fla. 1st DCA 2001) (quoting Fla. Stat. § 501.212(1)); see also Eirman v. Olde Disc. Corp., 697 So.2d 865, 866 (Fla. 4th DCA 1997) (holding that conduct did not violate FDUTPA because it was authorized by then-existing rules of the U.S. Securities & Exchange Commission). However, an act does not need to violate a specific rule or regulation in order to be considered deceptive. Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc., 643 So.2d 22, 24 (Fla. 4th DCA 1994). Therefore, the relevant analysis for this Court is whether Tenet, as the moving party, has demonstrated that a specific federal or state law affirmatively authorized it to engage in the conduct alleged in the Complaints, not whether Plaintiffs have demonstrated that Tenet's conduct violates a specific rule or regulation.

Prohias, 490 F. Supp. 2d at 1233-34.  Thus, it is likewise appropriate here, where Plaintiff has affirmatively alleged that the honey Defendant sold was deceptive and misleading because it did not contain pollen, for the Court to determine whether federal or state law allows pollen-less honey to be sold as honey.

The Court also disagrees with Plaintiff's argument that the voluntary nature of the honey standard means that it cannot serve as the basis for application of the FDUTPA safe harbor.  See Response at 9.  An act "permitted" by federal law necessarily encompasses voluntary standards.  Of more immediate concern to the Court, however, is whether the voluntary honey standard is still enacted.  In both its Reply and during the August 31, 2012 oral argument, Defendant failed to address Plaintiff's argument that these 1985 honey regulations were repealed in 1995.  For the reasons discussed

13

below, the Court concludes that the 1985 United States Standards For Grades of

Extracted Honey, 50 Fed. Reg. 15861 (Apr. 23, 1985)[8] cannot serve as a basis for the

FDUTPA safe harbor.

In 1995, the USDA removed "most of the voluntary U.S. grade standards and

other selected regulations covering a number of agricultural commodities (dairy

products" from the Code of Federal Regulations ("CFR").  60 Fed. Reg. 62172 (Dec. 4,

1995).  The United States Standards for Grades of Extracted Honey were among the

voluntary standards removed from the CFR.  Id.  (removing from CFR "52.1391-1420

Subpart—United States Standards for Grades of Extracted Honey").  Given that the

U.S. grade standards for honey were removed from the CFR, the Court doubts whether

they can serve as  "[a]n act or practice required or specifically permitted by federal or

state law."  See Fla. Stat. §501.212(1). More troubling, however, is that the U.S. grade

standards also explicitly state that "[c]ompliance with the provisions of these standards

shall not excuse failure to comply with the provisions of the Federal Food, Drug, and

Cosmetic Act, or with applicable State laws and regulations."  United States Standards

for Grades of Extracted Honey, 50 Fed. Reg. 15861, Exhibit A to Plaintiff's Response

[DE 37-1] at 3.  Thus, there is nothing on the face of the grade standards which would

---

[8]    The United States Standards for Grades of Extracted Honey described "extracted honey" as "honey that has been separated from the comb by centrifugal force, gravity, straining, or by other means."  The regulations further describe "filtered honey" as "honey of any type defined in these standards that has been filtered to the extent that all or most of the fine particles, pollen grains, air bubbles, or other materials normally found in suspension, have been removed."  "Strained honey" is "honey of any type defined in these standards that has been strained to the extent that most of the particles, including comb, propolis, or other defects normally found in honey, have been removed. Grains of pollen, small air bubbles, and very fine particles would not normally be removed."

prevent Florida from promulgating its own regulations related to honey, including a standard of identity.

### 2. Whether Defendant's Honey Falls Within the FDUTPA Safe Harbor Under Florida Law.

Defendant also contends that its honey meets the standard for honey set forth in Florida Statute § 586.02(7).  Motion at 12.  Defendant contends that the Florida Honey Standard, Florida Administrative Code Rule 5k-4.027, is unlawful because it "impermissibly enlarge[s] the scope of liability under Florida Statute section 586.025(s) by making it unlawful to label and sell 'honey' that *meets* the definition of § 586.02(7)." Id. at 13 (emphasis in original).  Plaintiff disagrees, arguing that (1) Defendant has failed to exhaust its administrative remedies and that (2) the Florida Department of Agriculture has been given the power to establish a standard of identity for honey. Response at 12.

Florida Statute § 586.02(8) defines honey as "the natural food product resulting from the harvest of nectar or honeydew by honeybees and the natural activities of the honeybees in processing nectar or honeydew."  Fla. Stat. § 586.02(8).[9]  This statute makes it unlawful to "[l]abel, represent, advertise, or offer honey for sale unless it meets the definition provided in this chapter."  Fla. Stat. § 586.025(3).  The statute also invests the Florida Department of Agriculture with the power to "[a]dopt rules necessary to enforce this chapter, rules relating to standard grades for honey and other honeybee products, and, after consultation with local governments and other affected

---

[9]    This definition applies to a law entitled ""Florida Honey Certification and Honeybee Law."  Fla. Stat. § 586.01.

stakeholders, rules to administer this section."  Fla. Stat. § 586.10(2)(b).  For the

reasons discussed below, the Court declines to find, as Defendant requests, that the

Florida Honey Standard[10] is inconsistent with the definition of honey contained within

the Florida Honey Certification and Honeybee Law.

It is apparent to the Court that the Florida Honey Standard was not  promulgated

solely under the rulemaking provisions contained within the Florida Honey Certification

and Honeybee Law, Fla. Stat. § 586.10.  As pointed out by Plaintiff, the Florida Honey

Standard appears to have been created, at least in part, under the Florida Food Safety

Act, Fla. Stat. §§ 500.01-500.80.  See Response at 12.  For example, a nearby

subsection of the Administrative Code specifically adopts certain federal regulations "as

rules under the Florida Food Act."  Fla. Admin. Code r. 5k-4.002.  Indeed, a provision of

the Florida Food Safety Act provides that the Department of Agriculture and Consumer

Services may:

> Fix[] and establish[] for any food or class of food under its common or usual
> name a reasonable definition and **standard of identity**, a reasonable standard

---

[10]    The Florida Administration Code sets forth an identity standard for honey ("Florida Honey Standard") which provides that honey is "the natural food product resulting from the harvest of nectar by honeybees and the natural activities of the honeybees in processing nectar. It consists essentially of different sugars, predominantly fructose and glucose as well as other substances such as organic acids, enzymes and solid particles derived from honey collection. The color of honey can vary from nearly colorless to dark brown. The consistency can be fluid, viscous or partially to completely crystallized. The flavor and aroma vary, but are derived from the plant's origin."  Fla. Admin. Code r. 5k-4.027(2).  The standard further provides that honey "shall not have begun to ferment or effervesce and **no pollen** or constituent unique to honey **may be removed** except where unavoidable in the removal of foreign matter." Fla. Admin. Code r. 5k-4.027(3) (emphasis added).

of quality or fill of container, or any reasonable sanitary rules governing the manufacture, processing, or handling of food products. In the prescribing of any standard of quality for any canned fruit or canned vegetable, consideration shall be given and due allowance made for the differing characteristics of the varieties of fruit or vegetable. In prescribing a definition and standard of identity for any food or class of food in which optional ingredients are permitted, the department shall, for the purpose of promoting safety, honesty, and fair dealing in the interest of consumers, designate the optional ingredients which shall be named on the label. The definitions and standards so adopted must conform to the definitions and standards adopted by the Secretary of the United States Department of Health and Human Services under authority conferred by 21 U.S.C. s. 341 and those definitions and standards adopted by the Secretary of the United States Department of Agriculture under the authority conferred by the Agriculture Marketing Act of 1946.

Fla. Stat. §500.09(1)(b) (emphasis added).  Additionally, an Administrative Code rule entitled "Adulteration and Misbranding - Honey," Fla. Admin. Code r. 5K-4.028, references both the Florida Food Safety Act and the Florida Honey Certification and Honeybee Law.   Given that the Florida Food Safety Act expressly permits the Department of Agriculture to create a standard of identity for food products such as honey and that the Florida Honey Certification and Honeybee Law, while defining honey[11] does not create a standard of identity for honey, the Court declines to find that the Florida Honey Standard is over broad under Florida law.[12]

_____

[11]      Notably, the definition of "honey" contained within the Florida Honey Certification and Honeybee Law is limited to "this chapter."  Fla. Stat. § 586.02.

[12]      In its Reply, Defendant contends that Rule 5k-4.027 is still over broad because its honey conforms to USDA standards which allow pollen-less honey to be marketed as honey.  Reply at 6.  The Court believes that this argument is more appropriately addressed as part of Defendant's preemption argument.  Additionally, because the Court declines to find that the Florida Honey Statute is over broad under Florida law, the Court does not reach Plaintiff's argument that Defendant failed to exhaust its administrative remedies.  See Response at 12; Reply at 7.

## E. Plaintiff's Claims Are Not Preempted by Federal Law.

Finally, Defendant argues that federal law, namely the Federal Food, Drug and

Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399d, as modified by the Nutrition Labeling

and Education Act, 21 U.S.C. § 341 ("NLEA"), expressly preempts the Florida Honey

Standard.  Motion at 14.  Plaintiff rejects this argument because "[n]othing in the FDCA

or the NLEA evidences a 'clear and manifest intention' by Congress" to preempt "the

states' historic ability to create standards of identity for food where the FDA has not."

Response at 12-13.  The Court agrees and declines to dismiss the Complaint on

express preemption grounds.

The doctrine of federal preemption derives from the Supremacy Clause of the

United States Constitution, U.S. Const. art. VI, cl. 2, which invalidates state laws that

"interfere with, or are contrary to, federal law."  Hillsborough Cnty. v. Automated Med.

Labs., Inc., 471 U.S. 707, 712 (1985) (quoting Gibbons v. Ogden, 22 U.S. 1 (1824)).

Federal law preempts state law when there is "express preemption, field preemption,

and implied conflict preemption."  Holk v. Snapple Beverage Corp., 575 F.3d 329, 334

(3d Cir. 2009) (citing Hillsborough Cnty., 471 U.S. at 713).  "Health and safety issues

have traditionally fallen within the province of state regulation.  This is true of the

regulation of food and beverage labeling and branding."  Holk, 575 F.3d at 334.  In

areas of traditional state regulation such as food and beverage labeling, "a presumption

against preemption exists."  Id.  (citing Cipollone v. Ligett Grp., Inc., 505 U.S. 504, 516

(1992)); see also Smith v. CSX Transp., Inc., 381 Fed. Appx. 885, 886 (11th Cir. 2010).

"[W]hen the text of a pre-emption clause is susceptible of more than one plausible

18

reading, courts ordinarily accept the reading that disfavors pre-emption." <u>Altria Grp., Inc. v. Good</u>, 555 U.S. 70, 77 (2008) (internal quotation marks and citations omitted).

Under the NLEA, "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity or that is not identical to the requirement of section 343(g)[13] of this title."  21 U.S.C. § 343-1(a)(1).  The statute further provides that a state may not establish "any requirement for the labeling of food of the type required by section 343(b), 343(d), 343(f), 343(h), 343(i)(1), or 343(k) of this title that is not identical to the requirement of such section."  21 U.S.C. § 343-1(a)(3).  Nonetheless, the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A[14] of the Federal Food, Drug, and Cosmetic Act."  Nutrition Labeling and Education Act, Pub. L No. 101-535, § 6(c)(1).

Both Plaintiff and Defendant agree that the FDA has not established a standard of identity for honey.  Motion at 15; Response at 17.  Defendant contends that because 21 U.S.C. § 343(i)(1) allows foods to be labeled according to their common name and

---

[13]     Title 21 U.S.C. § 343(g) provides that a food shall be misbranded: "[i]f it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food."  21 U.S.C. § 343 (g).

[14]     Section 403A is 21 U.S.C. § 343-1.

"honey" is indisputably the common name for the product it sold and marketed,

Plaintiff's claims are expressly preempted.  Motion at 15-17.  Plaintiff argues that

Defendant has read 21 U.S.C. § 343(i) too broadly because the provisions of 21 U.S.C.

§ 343(i) are triggered only in the absence of any standard of identity, state or federal.

Response at 16.

Title 21 U.S.C. § 343(i) provides that for any food product for which no standard

of identity has been established, the product is mislabeled:

> [u]nless its label bears (1) the common or usual name of the food, if any there
> be, and (2) in case it is fabricated from two or more ingredients, the common or
> usual name of each such ingredient and if the food purports to be a beverage
> containing vegetable or fruit juice, a statement with appropriate prominence on
> the information panel of the total percentage of such fruit or vegetable juice
> contained in the food; except that spices, flavorings, and colors not required to
> be certified under section 379e(c) of this title unless sold as spices, flavorings, or
> such colors, may be designated as spices, flavorings, and colorings without
> naming each. To the extent that compliance with the requirements of clause (2)
> of this paragraph is impracticable, or results in deception or unfair competition,
> exemptions shall be established by regulations promulgated by the Secretary.

21 U.S.C. § 343(i).  In support of its reading of 21 U.S.C. § 343(i), Plaintiff points out

that Section 343(g) expressly states that it only applies to federal standards of identity[13]

whereas Section 343(i) contains no similar limitation to state or federal standards of

identity.  Response at 16-17.  Accordingly, Plaintiff argues that 21 U.S.C. § 343(i)(1) is

triggered only when no standard of identity, state or federal, exists.  Defendant, by

contrast, argues that, under NLEA, honey is misbranded in violation of federal law if *not*

labeled according to its common or usual name."  Motion at 16 (emphasis in original).

---

[13]      The section references 21 U.S.C. § 341, a section which allows the FDA
to establish standards of identity for food.

The Court agrees with Plaintiff that the Florida Honey Standard is not expressly preempted by federal law.  When it enacted the NLEA, Congress was clear that it would not "preempt any provision of State law, unless such provision is expressly preempted under section 403A of the Federal Food, Drug, and Cosmetic Act."  Nutrition Labeling and Education Act, Pub. L No. 101-535, § 6(c)(1).  As Plaintiff points out, Congress has only expressly preempted standards of identity which conflict with established federal standards.  See Response at 15.  While Congress could have banned all state standards of identity, it did not do so.  Other courts have noted that under the NLEA, "'the only State requirements that are subject to preemption are those that are affirmatively different from the Federal requirements.'"  Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 372 (N.D. Cal. 2010) (citing In re PepsiCo, Inc. Bottled Water Mktg. & Sales Practices Litig., 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008)).  Here, the Florida Honey Standard does not conflict because there is no federal standard of identity for honey.  The Court does not find any conflict between this conclusion and 21 U.S.C. § 343-1(a)(3) because, if a state has prescribed a standard of identity for a food product, the provisions of 21 U.S.C. § 343(i)(1) are not triggered.[14]  The Court thus declines to grant the Motion on the grounds that the Florida Honey Standard is

---

[14]    The Court also finds Plaintiff's argument regarding the contrast in construction between Section 343(g) and Section 343(i) persuasive.  Section 343(g) states that it only applies to federal standards of identity enacted under 21 U.S.C. § 341, while Section 343(i) contains no similar limitation.  Accordingly, the Court must give effect to this distinction.  United States v. Bornscheuer, 563 F.3d 1228, 1237 (11th Cir. 2009) ("It is our duty to give effect, if possible, to every clause and word of a statute.")

expressly preempted by federal law.

Finally, Defendant argues that Plaintiff's claims would violate the dormant commerce clause. Motion at 17. In support of this argument, Defendant argues only that the burden of the Florida Honey Standard on Target would be "enormous" when compared to the "putative local benefits." Id. (citing Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)). The Court agrees with Plaintiff that this argument should not serve as a basis for the Court to grant the Motion. See Response at 20. Any putative effect on Defendant of the Florida Honey Standard is clearly outside the four corners of the Complaint and may require a factual inquiry by the Court.[15] Accordingly, the Court declines to grant the Motion on the grounds that the Florida Honey Standard violates the dormant commerce clause.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendant Target Corporation's Motion to Dismiss Complaint [DE 26] is **GRANTED**;

2.   Plaintiff's Florida Unfair Deceptive Trade Practices Act claim is **DISMISSED WITHOUT PREJUDICE**;

3.   Plaintiff's Unjust Enrichment claim is **DISMISSED WITH PREJUDICE**; and

---

[15]     This argument is also not well-developed and clearly tacked on to the end of Defendant's Motion. Although in Defendant's Reply, it cites a case where a court within this district granted a motion to dismiss on dormant commerce clause grounds, in that case, the commerce clause argument, unlike here, was a primary argument in favor of dismissing the complaint. See Rosenfeld v. Lu, 766 F. Supp. 1131 (S.D. Fla. 1991).

4.    Plaintiff may file an Amended Complaint on or before September 18, 2012; and

5.    Plaintiff's "Motion for Leave to File Surreply in Opposiiton to Defendants' [sic]

Motion to Dismiss" [DE 43] is **DENIED**.

     **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 4th day of September, 2012.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.